UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In Re: )
)
Avery Bradley Green, )           Case No.:  B-17-11043 C-11G
)
Debtor. )

## APPLICATION TO APPROVE EMPLOYMENT OF REAL ESTATE BROKER AND SPECIAL LEGAL COUNSEL FOR GREEN MANOR REST HOME FACILITY

NOW COMES the undersigned Trustee in this case, pursuant to Section 327(a) of the Bankruptcy Code, and respectfully states to the Court:

1.      It is necessary or advisable for the Trustee to have the services of a real estate broker to assist in selling certain real estate in which the Debtor has ownership interests, being the Green Manor Rest Home facility and real estate located at 1165 W. Parkton-Tobermory Road, Parkton, Robeson County, N.C., with any such sale subject to approval of the Court and the Trustee.

2.      Jordan Qualls with Howard Perry & Walston Commercial, LLC is a duly qualified real estate broker with experience in such matters, and the Trustee wishes to use his services as real estate broker in this case.  Attached hereto as an exhibit is the proposed listing agreement for the broker's employment in selling the real estate.

3.      To the best of the Trustee's knowledge, except as provided in paragraphs 4 and 5 below, the proposed real estate broker has no connection with the Debtor, creditors or any other party-in-interest, or their respective attorneys or accountants and is eligible under the Bankruptcy Code for employment for the purposes set forth in this application.  Mr. Qualls' affidavit of disinterestedness is attached.

4.      The Green Manor Rest Home facility and real estate located at 1165 W. Parkton-Tobermory Road, Parkton, Robeson County, N.C. has a certain certificate of need for 82 adult care beds within Robeson County ("Beds").  Attached is an Exclusive Right to Sell Listing Agreement for the Beds between the Heirs of Zeddie Green as Client and Qualls, PLLC as special legal counsel which Agreement terminates (see paragraph 10) if the Beds and real estate are sold concurrently to the same buyer but which otherwise authorizes special legal counsel to list the Beds for sale on the terms as set forth therein. Jordan Qualls with Qualls, PLLC is a duly qualified broker and special legal for the Beds with experience in such matters, and the Trustee wishes to use his services as broker and special legal counsel for the Beds in this case.

5.      It is necessary or advisable for the Trustee to have the services of a real estate broker to assist in selling certain real estate owned by Yreva Enterprises, LLC, of which the Debtor is the sole holder of ownership interests, being the facility and real estate located at 4501 Old Battleground Road, Greensboro, Guilford County, N.C. (the "Old Battleground Real Estate").  Jordan Qualls with Howard Perry & Walston Commercial, LLC is a duly qualified real estate broker with experience in such matters, and the Trustee wishes to use his services as real estate broker in this case.  Attached hereto as an exhibit is the proposed listing agreement for the

broker's employment in selling the real estate owned by Yreva Enterprises, LLC. From the Courts' reasoning in *In re Hopkins*, 2012 WL 423916, 2012 Bankr. LEXIS 801 (W.D. Michigan 2012) and in *In re Allan George Casavant*, Middle District of North Carolina case no. 13-80379 C-7D, Doc 76 filed 9/18/15, the Trustee infers that practice and procedure differs with respect to the sale of the real estate owned by Yreva Enterprises, LLC as compared to real estate which is property of the estate.

Wherefore, the Trustee requests that the Court enter an Order authorizing the Trustee to retain Jordan Qualls with Howard Perry & Walston Commercial, LLC as real estate broker with such services to be compensated from the estate pursuant to Bankruptcy Code §330(a), subject to the review and approval by the Bankruptcy Court as part of the application to approve any sale, if and only if there occurs a private sale in accordance with the listing agreement attached to this application; authorizing the Trustee to retain Jordan Qualls with Qualls PLLC as broker and special legal counsel with respect to the Beds, with such services to be compensated from the estate pursuant to Bankruptcy Code §330(a), subject to the review and approval by the Bankruptcy Court as part of the application to approve any sale, if and only if there occurs a private sale in accordance with the listing agreement attached to this application; granting such relief as is appropriate with respect to the Old Battleground Real Estate; and granting such other relief as to the Court may seem just and proper.

Respectfully submitted on this the 20th day of March, 2018.

 s/ Everett B. Saslow, Jr.
Everett B. Saslow, Jr.
N.C. State Bar No. 7301

OF COUNSEL:
HILL EVANS JORDAN & BEATTY
A Professional Limited Liability Company
Post Office Box 989
Greensboro, North Carolina 27402
Telephone: (336) 379-1390

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Avery Bradley Green, | ) | Case No.: B-17-11043 C-7G |
| | ) | |
| Debtor. | ) | |

### AFFIDAVIT OF DISINTERESTEDNESS

I, Jordan Qualls, Real Estate Broker, make solemn oath according to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

1.     I am a Real Estate Broker with, and principal in, the firm of Howard Perry & Walston Commercial, LLC, doing business in the State of North Carolina, and I maintain an office at 1001 Wade Avenue, Suite 111, Raleigh, North Carolina.

2.     Neither I nor Howard Perry & Walston Commercial, LLC is a creditor of the Debtor.

3.     I have no interest adverse to the interest of any of the creditors of the Debtor in this case; and I have no direct or indirect relationship to, connection with, or interest in the Debtor.

4.     Neither I nor the firm of Howard Perry & Walston Commercial, LLC has any connection with the Debtor in this case, the creditors, the United States Bankruptcy Administrator, or any other party in interest or their respective attorneys; and neither I nor Howard Perry & Walston Commercial, LLC represents any interest adverse to the Debtor or the estate in the matters upon which I and my firm are to be engaged.  I am eligible under the Bankruptcy Code for employment for the purposes set forth in the Trustee's application.

5.     I have not shared or agreed to share any compensation with any person, other than my partners, employees, or regular associates, and other than division of total commission consistent with ordinary practice under MLS and normal real estate practices.

This the 9th day of March, 2018.

_____
Jordan Qualls

NORTH CAROLINA

GUILFORD COUNTY

I, _Bernadine A. Cobb_, a Notary Public for said County and State, do hereby certify that Jordan Qualls personally appeared before me this day and, being first duly sworn, acknowledged the due execution of the foregoing affidavit.

Witness my hand and official seal, this the 9th day of March, 2018.

_____
Notary Public

My Commission Expires: 10/19/2020



**REALTORS' CommercialAlliance**
REALTOR® *North Carolina Association of REALTORS®*

EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right to Sell Listing Agreement, hereinafter known as "Agreement", is by and between ___Howard Perry & Walston Commercial, LLC___ (Name of Firm), hereinafter known as "Firm" and ___Green, Zeddie B. Heirs___ hereinafter known as "Client".

In consideration of Firm's agreement to list the following described property, hereinafter known as "Property," for sale and to use its efforts to find a buyer, Client agrees with Firm as follows:

**1. EXCLUSIVE RIGHT TO SELL:** For a period extending until 11:59 p.m. (based upon the time at the locale of the Firm's office) on ___March 12___, 20 _19_. Firm shall have the exclusive right to sell the Property as agent of Client at the price and on the terms set forth below, or upon such other terms as may be agreed upon in writing by Client with any buyer. **Client represents that, as of the commencement date of this Agreement, Client is not a party to a listing agreement with any other firm.**

**2. BROKER COOPERATION/AGENCY RELATIONSHIPS:** Firm has advised Client of Firm's general company policy regarding cooperating with subagents, buyer agents or dual agents. Client has received and read the "Working with Real Estate Agents" publication and authorizes the Firm to compensate (subject to Paragraphs 7b.(i) and 7b.(ii)) and cooperate with the following (Firm agrees to inquire of all agents at the time of initial contact as to their agency status): (CHECK ALL APPLICABLE AGENCIES)

☒ subagents of Client
☒ buyer agents
☒ dual agents representing both Client and the buyer in the same transaction (subject to the terms of Section 16).

**3. PROPERTY: (Address)** _1165 West Parkton Tobermory Road, Parkton, NC_

**(Legal Description/Description)** _Map No. 9, Block 4, Lot 20; Robeson County, PIN # 040153415200;_

☐ See attached Exhibit _____ for legal description/description of premises.

To the best of Client's knowledge: (i) the Property is not subject to any rights of first refusal, rights of first offer or similar rights of others to acquire or lease all or a portion of the Property, (ii) as respects the Property there have been no licenses or leases granted or transfers of mineral, oil and gas or other similar rights, (iii) Client has paid or will pay in full all persons recently contracted with (or contracted with hereafter prior to any transaction) to do work related to or affecting the Property and Client will comply with all laws related to mechanics liens, (iv) the streets serving the Property are public streets and are maintained by a public authority, and (v) the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system" commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows (Insert "None" or the identification of any matters relating to (i) through (v) above, if any): _____
_Carolina Transitional Services, Inc. had or has possession by lease agreement._

**4. LISTING TERMS:**

Sales Price: _$ 1,500,000_

Client Financing Terms: _____

Possession Delivered: _____

Other Terms: _____

☐ See attached Exhibit _____ for additional listing terms.

REALTOR®

This form approved by:
North Carolina Association of REALTORS®, Inc.

Page 1 of 7

Firm Rep. Initials _____ Client Initials _____ EBS J.

STANDARD FORM 571
Revised 7/2017
© 7/2017

ADVERTISING AND DATABASE LISTINGS: In connection with the marketing and sale of the Property, Client authorizes and directs Firm: (CHECK ALL APPLICABLE SECTIONS)

☒ to place a sign on the Property. All other signs marketing the Property for sale shall be removed.

☒ **Listing Service.** To submit pertinent information concerning the Property to any listing service or information exchange of which Firm is a member or in which any of Firm's agents participate and to furnish to such listing service or information exchange notice of all changes of information concerning the Property authorized in writing by Client. Client authorizes Firm, upon execution of a sales contract for the Property, to notify the listing service or information exchange of the pending sale, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service, information exchange, appraisers and real estate brokers.

☒ **Advertising Other Than On The Internet.** Client authorizes Firm to advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Firm may decide.

☒ **Internet Advertising.** Client authorizes Firm to display information about the Property on the Internet either directly or through a program of any listing service or information exchange of which the Firm is a member or in which any of Firm's agents participate, and authorizes other firms who belong to any listing service of which the Firm is a member or in which any of Firm's agents participate to display information about the Property on the Internet in accordance with the listing service or information exchange rules and regulations. *If Client does not authorize Internet Advertising as set forth above, Client MUST complete an opt-out form in accordance with listing service rules. (NOTE: NCAR Form #105 may be used for this purpose.)*

If Client authorizes Internet Advertising as set forth above, Client authorizes the display of (*Check ALL applicable sections*):

☒ The address of the Property

☒ Automated estimates of the market value of the Property

☒ Third-party comments about the Property

Client acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Firm, including but not limited to:

1.  unauthorized use of a lock/key box,
2.  control of visitors during or after a showing or an open house,
3.  inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Firm participates.

Client therefore agrees to indemnify and hold harmless Firm from any damages, costs, attorneys' fees and other expenses as a result of any personal injury or property loss or damage to Client or any other person not caused by Firm's negligence arising directly or indirectly out of any such marketing services.

MARKETING EXPENSE: In the event that the Property does not sell during the term of this Agreement, Client shall nonetheless be obligated to reimburse Firm for actual documented expenses incurred in marketing the Property up to the amount of $ Not Applicable                .

## 5. SPECIAL PROVISIONS:

_____

_____

_____

☒ See attached Exhibit _____A_____ for special provisions.

## 6. COOPERATION WITH FIRM:

**a. Exclusive Rights:** Client agrees to cooperate with Firm to facilitate the sale of the Property. The Property may be shown only by appointment made by or through Firm. Client immediately shall refer to Firm all inquiries or offers it may receive regarding the Property. Client agrees to cooperate with Firm in bringing about a sale of the Property. All negotiations shall be conducted through Firm. Firm shall be identified as the contact firm with all state and local economic development agencies being notified of the Property's availability.

**b. Services:** No management services, repair services, collection services, notices, legal services or tax services shall be

Not Applicable

Page 2 of 7
Firm Rep. Initials _____ Client Initials _____   EBJJ

provided by Firm. In the event that Firm does procure any of these services at the request of Client, it is understood and agreed that Firm shall only be acting in the capacity of procurer for Client and shall accrue no liability or responsibility in connection with any services so obtained on behalf of Client. This exclusion of liability and responsibility shall not apply in the event that Firm directly contracts with Client to provide any such service.

**7. COMMISSIONS:** The amount, format or rate of real estate commission is not fixed by law. Commissions are set by each broker individually and may be negotiable between a firm and its client.

### a. Sales Commissions:

(i) Commissions shall be earned when Client accepts an unconditional offer from a buyer or when all conditions have been met following Client's acceptance of a conditional offer from a buyer, whether the buyer is procured by Firm, the Client or anyone else during the term of this Agreement. Client shall pay Firm a commission equal to _____ six _____ percent ( __6__ %) of the gross sales price of the ___Not Applicable___ Property, or the sum of

(S ___Not Applicable___ ), whichever is greater, and/or other: _Not Applicable_

Commission shall be paid in cash or by bank check. Gross sales price includes any and all consideration received or receivable, in whatever form, by Client including, but not limited to, the assumption or release of existing liabilities. Client shall pay the commission upon delivery of the deed or other evidence of transfer of title or interest; provided, however, if the transaction involves an installment contract, then Client shall pay the commission upon the signing of such installment contract. In the event of any breach or termination by Client of any contract of purchase and sale, it is understood and agreed that the commission remains earned and payable upon notice given by Client to buyer of Client's intent not to proceed with such sale, notwithstanding the basis of such intent not to proceed. In the event Client contributes or conveys the Property or any interest therein to a joint venture, partnership or other business entity or executes an exchange, the commission shall be calculated on the fair market value of the Property or interest therein contributed, conveyed, transferred or exchanged and is payable at the time of the contribution, conveyance, transfer or exchange. If Client is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Client at the time of the transfer. Provided, however that this interest transfer provision shall not apply to a transfer of an interest in a partnership, corporation or other business entity between existing partners, shareholders or other interest holders of the entity.

☐ ~~If this box is checked, notwithstanding the foregoing, in the event that there is no cooperating agent involved in a sale transaction, the commission stated in (i) above shall be adjusted to~~ _____ ~~percent (_____%) of the gross sales price of the Property or~~ _____ ~~(S_____),~~ ~~whichever is greater, and/or other:~~ _____

~~For purposes of this subsection only, "cooperating agent" shall mean any agent other than the individual licensee signing on behalf of Firm below.~~

(ii) **Options:** ___10___ % of any option fees shall be paid to Firm at the time such monies are paid to Client, said amount to be applied to commissions payable pursuant to Paragraph 7.a.(i), provided, Firm shall not be paid, on account of this provision, an amount in excess of its entitlement pursuant to Paragraph 7.a.(i).

(iii) Should there be a forfeiture of earnest money, Firm shall be entitled to ___50___ % of same, provided that Firm shall not receive an amount in excess of the commission set forth in Paragraph 7.a.(i).

### b. General Commissions Provisions:

(i) Firm shall not be required to compensate or pay any commission to, either directly or indirectly, a buyer who seeks to be compensated or paid a commission in connection with any transaction pursuant to this Agreement.

(ii) If Firm has worked directly with a buyer in connection with the Property, either as a client or a customer, and such relationship is evidenced in writing (either by a CONFIRMATION OF AGENCY RELATIONSHIP AND REGISTRATION STATEMENT - NCAR Form 510 - or substantially similar registration document), then Firm may not compensate or pay any commission to another real estate agent (not associated with Firm) in connection with any transaction pursuant to this Agreement involving said registered buyer.

(iii) In the event Client fails to make payments within the time limits set forth in this Agreement, then the delinquent amount shall bear interest from the date due until paid at the maximum rate permitted in the state of North Carolina. If Firm is required to

Page 3 of 7

Firm Rep. Initials _____   Client Initials _____   _BBSS._

STANDARD FORM 571
Revised 7/2017
© 7/2017

institute legal action (including mediation or arbitration) against Client relating to this Agreement, Firm shall be entitled to costs of such action.

(iv) In the event Client sells or otherwise disposes of its interest in the Property, Client shall remain liable for payment of the commissions provided for in this Agreement, including, without limitation, the commission obligations set forth in Paragraph 7.a. unless the purchaser or transferee assumes all of such obligations in writing and Firm agrees in writing to such assumption

(v) "Buyer" and "registered prospect" as used herein shall be deemed to include, but not be limited to: (i) any holder of a right of first offer or refusal or similar right which holder is not specifically named herein and excluded from the terms of this Agreement, (ii) any prospect registered by Firm pursuant to Paragraph 8 hereof (which prospect registration listing shall identify specific principals and shall not include brokers acting in a brokerage capacity), and, (iii) the successors or assigns, principals, officers, directors, employees or shareholders thereof or any affiliate, alter-ego or commonly controlled entity of any such person.

## 8. REGISTERED PROSPECTS:

**a. Prior Listing Agreements:** If the Property was exclusively listed for sale with another agency prior to this Agreement, then Client shall provide Firm in writing the names of registered prospects (as defined in Paragraph 7b.(v) above) and the duration of the protection period under the prior listing agreement. If Client provides such information to Firm within twenty (20) days of the date of this Agreement, then a direct or indirect sale or agreement to sell during such protection period to a registered prospect is excluded from this Agreement.

**b. Later Sale To Registered Prospect:** If within ___365___ days after the expiration or earlier termination of this Agreement (the "Protection Period"), Client directly or indirectly sells or agrees to sell the Property to a party with whom Firm (or any other agent acting for or through Firm) has had substantive bilateral communication concerning the Property during the term of this Agreement, Client shall pay Firm the same commission to which Firm would have been entitled had the sale been made during the term of this Agreement; provided that names of registered prospects (as defined in Paragraph 7b.(v) above) are delivered or postmarked to Client within fifteen (15) days after the expiration or earlier termination of this Agreement. **In the event the Property is exclusively listed for sale with another agency after the expiration or earlier termination of this Agreement and Client directly or indirectly sells or agrees to sell the Property to a registered prospect (as defined in Paragraph 7b.(v) above) during the Protection Period, then Client shall pay to Firm the same commission to which Firm would have been entitled.**

**9. LEASE PROTECTION PROVISION:** In the event that the Property is leased during the term hereof, it is acknowledged that Firm shall nonetheless earn a commission upon execution of such lease agreement. The parties agree to act in good faith in determining that the commission is an amount reasonable in this area for the type of Property.

**10. AUTHORITY:** Client represents and warrants to Firm that it has the right to offer the Property for sale. Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement and such instruments as may be necessary to effectuate any transaction contemplated by this Agreement on behalf of the party for whom he or she signs and that his or her signature binds such party and the holders of the interests in Client.

**11. BANKRUPTCY:** In the event that the Property comes under the jurisdiction of a bankruptcy court, Client shall immediately notify Firm of the same and, if Client is the subject of bankruptcy, shall promptly take all steps necessary to obtain court approval of Firm's appointment to sell the Property, unless Firm shall elect to terminate this Agreement upon said notice.

**12. INDEMNIFICATION:** Client represents and warrants that the information set forth herein and any other information as may be furnished to Firm by Client, including information relating to environmental matters, is correct to the best of Client's knowledge. Firm shall have no obligation or responsibility for checking or verifying any such information, except as may be required by law. Client shall indemnify Firm for any and all loss or damage sustained by Firm as a result of (i) Firm's or Client's furnishing such information to a buyer or anyone else; and (ii) the presence of storage tanks on, or the presence or release of hazardous substances, materials and wastes on or from, the Property.

**13. PARTIES AND BENEFITS:** This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors and assigns and their personal representatives. Client agrees that at any time during the term of this Agreement, Firm may either assign Firm's rights and responsibilities hereunder to another real estate agency, or transfer to another person or entity all or part of the ownership of Firm's real estate agency, and that in the event of any such assignment or transfer, this Agreement shall continue in full force and effect; provided, that any assignee or transferee must be licensed to engage in the business of real estate brokerage in the State of North Carolina. In the event of any such assignment or transfer, Client may terminate this Agreement without cause on thirty (30) days' prior written notice to the assignee or transferee of Client's intent to terminate this Agreement.

**14. COUNTERPARTS; ENTIRE AGREEMENT; AMENDMENT; SEVERABILITY; ATTORNEYS FEES; GOVERNING LAW:** This Agreement may be executed in one or more counterparts, which taken together, shall constitute one and the same original document. Copies of original signature pages of this Agreement may be exchanged via facsimile or e-mail, and any such copies shall

Firm Rep. Initials _____ Client Initials _____ EDJ.

STANDARD FORM 571
Revised 7/2017
© 7/2017

constitute originals. This Agreement contains the entire agreement of the parties and supercedes all prior written and oral proposals, understandings, agreements and representations, all of which are merged herein. The parties acknowledge and agree that: (i) the initials lines at the bottom of each page of this Agreement are merely evidence of their having reviewed the terms of each page, and (ii) the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement. No amendment or modification to this Agreement shall be effective unless it is in writing and executed by all parties hereto. No waiver of any breach of any obligation or promise contained herein shall be regarded as a waiver of any future breach of the same or any other obligation or promise. The invalidity of one or more provisions of this Agreement shall not affect the validity of any other provisions hereof and this Agreement shall be construed and enforced as if such invalid provisions were not included. It shall not be deemed a breach of this Agreement for Firm to comply with an order resulting from an arbitration conducted by a REALTOR® association or issued by a court of competent jurisdiction. If legal proceedings (including mediation or arbitration) are instituted to enforce any provision of this Agreement, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorneys fees and court costs incurred in connection with the proceeding. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.

15. **INTELLECTUAL PROPERTY RIGHTS:** Client grants to Firm and any listing or commercial database service in which Firm or its agents participate a non-exclusive, perpetual license to use any information, photographs, drawings or other intellectual property that Client provides to Firm, including the rights to display, reproduce or make derivative works from the intellectual property.

16. **DUAL AGENCY:** Client has received a copy of the "Working With Real Estate Agents" brochure and has reviewed it with Firm. Client understands that the potential for dual agency will arise if a buyer who has an agency relationship with Firm becomes interested in viewing the Property. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

(a) Authorization *(initial only ONE)*.

   X   Client authorizes the Firm to act as a dual agent, representing both the Client and the buyer, subject to the terms and conditions set forth in this paragraph below.

      Client desires exclusive representation at all times during this agreement and does NOT authorize Firm to act in the capacity of dual agent. *If Client does not authorize Firm to act as a dual agent, the remainder of this paragraph shall not apply.*

(b) Disclosure of Information. In the event Firm serves as a dual agent, Client agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:

(1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.

(c) Firm's Role as Dual Agent. If Firm serves as agent for both Client and a buyer in a transaction involving the Property, Firm shall make every reasonable effort to represent Client and buyer in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Client and buyer. Client understands and acknowledges that:

(1) Prior to the time dual agency occurs, Firm will act as Client's exclusive agent;

(2) In its separate representation of Client and buyer, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;

(3) Firm is required by law to disclose to Client and buyer any known or reasonably ascertainable material facts. Client agrees Firm shall not be liable to Client for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(d) Client's Role. Should Firm become a dual agent, Client understands and acknowledges that:

(1) Client has the responsibility of making Client's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Firm;

(2) Client is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Client and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

Page 5 of 7

Firm Rep. Initials _____ Client Initials _____      6/3/5 J.

STANDARD FORM 571
Revised 7/2017
© 7/2017

THE NORTH CAROLINA ASSOCIATION OF REALTORS , INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

**CLIENT:**
Individual

Date: _____

_____

Date: _____

**Business Entity**

Green, Zeddie B. Heirs
(Name of Entity)

By: _____

Name: _____ Avery B. Green

Title: _____ Heir to Zeddie B. Green

Date: _____ 3/19/18

Address: _____ 7103 Mackintosh Place

_____ Summerfield, NC 27358

Phone: _____ (336) 549-6800

Facsimile: _____

E-mail: _____ averybgreen@gmail.com

By: _Everett B. Saslow, Jr., Trustee_

Name: _____ Everett B. Saslow. Jr.

Title: _ Bankruptcy Trustee for Avery B. Green

Date: _ 3/20/2018

Address: _ Post Office Box 989

_ Greensboro, North Carolina 27402

Phone: _ 336-379-1390 (extension 243)

E-mail: _ esaslow@hillevans.com

**FIRM:**

Howard Perry & Walston Commercial, LLC
(Name of Firm)

By: _____

Name: _____ Jordan Qualls

Individual License #: _277649

Date: _3/12/2018

Address: _ 1001 Wade Avenue, Suite 111

_ Raleigh, NC 27605

Phone: _ 919.913.1433

Facsimile: _____

E-mail: _ jordan.qualls@svn.com

STANDARD FORM 571
Revised 7/2017
©7/2017

### Exhibit A
### Addendum to Exclusive Right to Sell Listing Agreement

Notwithstanding anything to the contrary stated in the Exclusive Right to Sell Listing Agreement to which this Addendum is attached, the following provisions and conditions apply to this Agreement:

1.     Everett B. Saslow, Jr., Trustee as seller or Client (hereinafter called "Seller") is a Chapter 11 Trustee in bankruptcy. Seller's obligations under this Agreement are subject to approval by the United States Bankruptcy Court, with such approval to be requested from the Court at such time as an offer to purchase is accepted by the Seller. The Term of the Agreement is subject to being terminated by a creditor's obtaining relief from stay in the Bankruptcy case or by the Bankruptcy Court's granting any party's application for abandonment or for a public auction sale or for approval of a private sale. The Bankruptcy Court may enter Orders providing that this Agreement is not an exclusive Agreement. Seller has advised Firm that any employment of Firm as a professional needs to be approved by the United States Bankruptcy Court.

2.     The fees and commissions provided for by this Agreement will not become payable unless such fee or commission is approved by the United States Bankruptcy Court and except to the extent that such fee is approved by the United States Bankruptcy Court. The Seller will make application to the Court to request approval of the fee at such time as an offer to purchase is accepted by the Seller.

3.     Either Firm or Seller can terminate this Agreement at any time upon forty five (45) days written notice given to the other party. If Seller terminates this Agreement before it has been in effect for six (6) months, Seller shall reimburse Firm for actual documented expenses incurred in marketing the Property up to the amount of two thousand dollars ($2,000).

4.     No commission is earned until the Property is sold at closing. In the event this Agreement is terminated prior to closing, commission to Firm shall be earned upon closing according to the terms set out in paragraph 8.b of this Agreement.

5.     No commissions or fees are due under section 7 or under other terms of the Agreement except to the extent approved by the United States Bankruptcy Court.

6.     Paragraph 9 does not apply to a new lease with Carolina Transitional Services, Inc. or affiliates. Paragraph 10 does not apply to Everett B. Saslow, Jr., Trustee; and he intends to seek a Declaratory Judgment and relief under 11 U.S.C. §363(h) with respect to the heirs of Zeddie B. Green. Paragraph 11 is modified by the disclosures in this Exhibit A. The third sentence of paragraph 12 does not apply to Everett B. Saslow, Jr., Trustee. The indemnification clause on Page 6 of 7 does not apply to Everett B. Saslow, Jr., Trustee. There are liens on the property which will need to be cleared or released at closing. At Closing, Seller will deliver a Trustee's deed. Trustee reserves the right to transfer all existing deeds of trust and any other liens to the proceeds of sale by Order of the United States Bankruptcy Court. Seller executes this Agreement as trustee in a representative capacity, and Everett B. Saslow, Jr. has no personal or individual liability hereunder.

Agent Initials ___//Seller Initials ___ EBSJr.

# Exclusive Right to Sell Listing Agreement

This Exclusive Right to Sell Listing Agreement ("Agreement") is by and between Qualls, PLLC and The Heirs of Zeddie B. Green (the "Client"), and is regarding the listing and sale of the certificate of need for 82 adult care home beds within Robeson County, North Carolina. In consideration of Qualls, PLLS's agreement to list the following described certificate of need (the "Beds") for sale and to use its efforts to find a buyer, the Client agrees with Qualls, PLLC as follows:

1.  EXCLUSIVE RIGHT TO SELL – For a period extending until 11:59 p.m. EST on March 12, 2019, Qualls, PLLC shall have the exclusive right to sell the Beds as agent of the Client.

2.  AGENCY RELATIONSHIPS – The Client understands that Qualls, PLLC may procure a buyer with which Qualls, PLLC has, or has had, an agency relationship regarding the buying, selling, or relocation of certificates of need.

3.  BEDS TO BE SOLD – The Beds subject to this Agreement are located at 1165 West Parkton Tobermory Road, Parkton, North Carolina.

4.  ENCUMBRANCES – To the best of the Client's knowledge, the Beds are not subject to any rights of first refusal, rights of first offer, or similar rights of others to acquire or lease all or a portion of the Beds.

5.  COMMISSIONS – The commission for sale of the Beds shall be earned when the Client accepts an unconditional offer from a buyer or when all conditions have been met following the Client's acceptance of a conditional offer from a buyer, whether the buyer is procured by Qualls, PLLC, the Client, or anyone else during the term of this Agreement. The Client shall pay Qualls, PLLC a commission equal to six percent (6%) of the gross sales price of the Beds.

    (a) Commission shall be paid in cash or by bank check. Gross sales price includes any and all consideration received or receivable, in whatever form, by the Client including, but not limited to, the assumption or release of existing liabilities. The Client shall pay the commission upon transfer of the certificate of need interest; provided, however, if the transaction involves an installment contract, then the Client shall pay the commission upon the signing of such installment contract.

    (b) In the event the Client contributes or conveys the Beds or any interest therein to a joint venture, partnership, or other business entity or executes an exchange, the commission shall be calculated on the fair market value of the Beds or interest therein contributed, conveyed, transferred, or exchanged and is payable at the time of the contribution, conveyance, transfer, or exchange.

    (c) Ten percent (10%) of any option fees shall be paid to Qualls, PLLC at the time such monies are paid to the Client, said amount to be applied to commissions payable pursuant to Paragraph 5.

Exclusive Right to Sell Listing Agreement (Robeson Beds)                                    Page   1   of   4

(d) Should there be a forfeiture of earnest money, Qualls, PLLC shall be entitled to fifty percent (50%) of same.

(e) In the event the Client fails to make payments within the time limits set forth in this Agreement, then the delinquent amount shall bear interest from the date due until paid at the maximum rate permitted in the state of North Carolina. If Qualls, PLLC is required to institute legal action (including mediation or arbitration) against the Client relating to this Agreement, Qualls, PLLC shall be entitled to costs of such action.

6. LATER SALE – If within 365 days after the expiration or earlier termination of this Agreement, the Client directly or indirectly sells or agrees to sell the Beds to a party with whom Qualls, PLLC (or any other agent acting for or through Qualls, PLLC) has had substantive bilateral communication concerning the Beds during the term of this Agreement, the Client shall pay Qualls, PLLC the same commission to which Qualls, PLLC would have been entitled had the sale been made during the term of this Agreement.

7. AUTHORITY – The Client represents and warrants to Qualls, PLLC that it has the right to offer the Beds for sale. Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement and such instruments as may be necessary to effectuate any transaction contemplated by this Agreement on behalf of the party for whom he or she signs and that his or her signature binds such party and the holders of the interests in the Client.

8. INDEMNIFICATION – The Client represents and warrants that the information set forth herein and any other information as may be furnished to Qualls, PLLC by the Client is correct to the best of the Client's knowledge. Qualls, PLLC shall have no obligation or responsibility for checking or verifying any such information, except as may be required by law. The Client shall indemnify Qualls, PLLC for any and all loss or damage sustained by Qualls, PLLC as a result of Qualls, PLLC's or the Client's furnishing such information to a buyer or anyone else.

9. BANKRUPTCY PROVISIONS – Due to the Client being subject to bankruptcy, this Agreement is subject to the following provisions:

(a) Everett B. Saslow, Jr., Trustee as seller or Client (hereinafter called "Seller") is a Chapter 11 Trustee in bankruptcy. Seller's obligations under this Agreement are subject to approval by the United States Bankruptcy Court, with such approval to be requested from the Court at such time as an offer to purchase is accepted by the Seller. The Term of the Agreement is subject to being terminated by a creditor's obtaining relief from stay in the Bankruptcy case or by the Bankruptcy Court's granting any party's application for abandonment or for a public auction sale or for approval of a private sale. The Bankruptcy Court may enter Orders providing that this Agreement is not an exclusive Agreement. Seller has advised Qualls, PLLC that any employment of Firm as a professional needs to be approved by the United States Bankruptcy Court.

(b) The fees and commissions provided for by this Agreement will not become payable unless such fee or commission is approved by the United States Bankruptcy Court and except to the extent that such fee is approved by the United States Bankruptcy Court. The Seller will make application to the Court to request approval of the fee at such time as an offer to purchase is accepted by the Seller.

(c) Either Qualls, PLLC or Seller can terminate this Agreement at any time upon forty five (45) days written notice given to the other party. If Seller terminates this Agreement before it has been in effect for six (6) months, Seller shall reimburse Qualls, PLLC for actual documented expenses incurred in marketing the Beds up to the amount of two thousand dollars ($2,000).

(d) No commission is earned until the Beds are sold at closing. In the event this Agreement is terminated prior to closing, commission to Qualls, PLLC shall be earned upon closing according to the terms set out in section 6 of this Agreement.

(e) No commissions or fees are due under section 5 or under other terms of the Agreement except to the extent approved by the United States Bankruptcy Court.

(f) Section 7 of this Agreement does not apply to Everett B. Saslow, Jr., Trustee; and he intends to seek a Declaratory Judgment and relief under 11 U.S.C. §363(h) with respect to the heirs of Zeddie B. Green. The third sentence of paragraph 8 does not apply to Everett B. Saslow, Jr., Trustee. There are liens on the property to which the Beds are assigned which may need to be cleared or released at closing. Trustee reserves the right to transfer all existing deeds of trust and any other liens to the proceeds of sale by Order of the United States Bankruptcy Court. Seller executes this Agreement as trustee in a representative capacity, and Everett B. Saslow, Jr. has no personal or individual liability hereunder.

10. PREEMPTION – This Agreement is made subject to a separate agreement which the Client has entered into with Howard Perry and Walston Commercial, LLC to sell the property to which the Beds are attached (the "Property"). In the event the Beds are sold concurrently with the Property to the same buyer under that separate agreement, this Agreement shall terminate, and no commission shall be due to Qualls, PLLC.

11. ENTIRE AGREEMENT – This Agreement constitutes the entire agreement between Qualls, PLLC and the Client with respect to this project and supersedes all prior agreements, representations, and understandings of the parties, written or oral.

12. HEADINGS – The section headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

13. ASSIGNMENT – Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or

Exclusive Right to Sell Listing Agreement (Robeson Beds)                    Page  3  of  4

13. ASSIGNMENT – Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise by either of the parties hereto without the prior written consent of the other party.

14. GOVERNING LAW – This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of North Carolina, without regard to its conflict of laws rules.

15. SEVERABILITY – The invalidity or unenforceability of any provisions of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

The Undersigned agree to the terms set forth in this Agreement, and is made effective as of the _____ day of _____, 2018.

3/12/18

Jordan Qualls, Manager
Qualls, PLLC
533 Meadowmont Village Circle
Chapel Hill, NC 27517
(919) 904-4345
jordanqualls@quallslegal.com

3/19/18
Date

Avery B. Green
Heir to Zeddie B. Green
7103 Mackintosh Place
Summerfield, NC 27358
(336) 549-6800
averybgreen@gmail.com

3/20/2018
Date

Everett B. Saslow, Jr.
Bankruptcy Trustee for Avery B. Green
Post Office Box 989
Greensboro, NC 27402
(336) 379-1390 (ext 243)
esaslow@hillevans.com

Exclusive Right to Sell Listing Agreement (Robeson Beds)          Page  4  of  4



EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right to Sell Listing Agreement, hereinafter known as "Agreement", is by and between __Howard Perry & Walston Commercial, LLC__ (Name of Firm), hereinafter known as "Firm" and __YREVA Enterprises, LLC__ hereinafter known as "Client".

In consideration of Firm's agreement to list the following described property, hereinafter known as "Property," for sale and to use its efforts to find a buyer, Client agrees with Firm as follows:

**1. EXCLUSIVE RIGHT TO SELL:** For a period extending until 11:59 p.m. (based upon the time at the locale of the Firm's office) on _____ March 12 _____ , 20 _19_ . Firm shall have the exclusive right to sell the Property as agent of Client at the price and on the terms set forth below, or upon such other terms as may be agreed upon in writing by Client with any buyer. **Client represents that, as of the commencement date of this Agreement, Client is not a party to a listing agreement with any other firm.**

**2. BROKER COOPERATION/AGENCY RELATIONSHIPS:** Firm has advised Client of Firm's general company policy regarding cooperating with subagents, buyer agents or dual agents. Client has received and read the "Working with Real Estate Agents" publication and authorizes the Firm to compensate (subject to Paragraphs 7b.(i) and 7b.(ii)) and cooperate with the following (Firm agrees to inquire of all agents at the time of initial contact as to their agency status): (CHECK ALL APPLICABLE AGENCIES)

☒ subagents of Client
☒ buyer agents
☒ dual agents representing both Client and the buyer in the same transaction (subject to the terms of Section 16).

**3. PROPERTY:** (Address) _4501 Old Battleground Road, Greensboro, NC_

(Legal Description/Description) _7.01AC STANLEY SR 2340, PIN # 7847 42 3821, Parcel Number 0080358_

□ See attached Exhibit _____ for legal description/description of premises.

To the best of Client's knowledge: (i) the Property is not subject to any rights of first refusal, rights of first offer or similar rights of others to acquire or lease all or a portion of the Property, (ii) as respects the Property there have been no licenses or leases granted or transfers of mineral, oil and gas or other similar rights, (iii) Client has paid or will pay in full all persons recently contracted with (or contracted with hereafter prior to any transaction) to do work related to or affecting the Property and Client will comply with all laws related to mechanics liens, (iv) the streets serving the Property are public streets and are maintained by a public authority, and (v) the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system" commonly known as "EIFS" or '"synthetic stucco", unless disclosed as follows (Insert "None" or the identification of any matters relating to (i) through (v) above, if any): _____

**4. LISTING TERMS:**

Sales Price: _$ 4,750,000_

Client Financing Terms: _____

Possession Delivered: _____

Other Terms: _____

□ See attached Exhibit _____ for additional listing terms.

Page 1 of 7
This form approved by:
North Carolina Association of REALTORS®, Inc.
Firm Rep. Initials ___ Client Initials ___ EBS Jr.

STANDARD FORM 571
Revised 7/2017
© 7/2017

ADVERTISING AND DATABASE LISTINGS:  In connection with the marketing and sale of the Property, Client authorizes and directs Firm: (CHECK ALL APPLICABLE SECTIONS)

    ☒  to place a sign on the Property. All other signs marketing the Property for sale shall be removed.

    ☒  **Listing Service.**  To submit pertinent information concerning the Property to any listing service or information exchange of which Firm is a member or in which any of Firm's agents participate and to furnish to such listing service or information exchange notice of all changes of information concerning the Property authorized in writing by Client.  Client authorizes Firm, upon execution of a sales contract for the Property, to notify the listing service or information exchange of the pending sale, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service, information exchange, appraisers and real estate brokers.

    ☒  **Advertising Other Than On The Internet**   Client authorizes Firm to advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Firm may decide.

    ☒  **Internet Advertising.** Client authorizes Firm to display information about the Property on the Internet either directly or through a program of any listing service or information exchange of which the Firm is a member or in which any of Firm's agents participate, and authorizes other firms who belong to any listing service of which the Firm is a member or in which any of Firm's agents participate to display information about the Property on the Internet in accordance with the listing service or information exchange rules and regulations.  *If Client does not authorize Internet Advertising as set forth above, Client MUST complete an opt-out form in accordance with listing service rules.  (NOTE: NCAR Form #105 may be used for this purpose.)*

If Client authorizes Internet Advertising as set forth above, Client authorizes the display of (*Check ALL applicable sections*):

        ☒ The address of the Property

        ☒ Automated estimates of the market value of the Property

        ☒ Third-party comments about the Property

Client acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Firm, including but not limited to:

    1.  unauthorized use of a lock/key box,
    2.  control of visitors during or after a showing or an open house,
    3.  inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Firm participates.

Client therefore agrees to indemnify and hold harmless Firm from any damages, costs, attorneys' fees and other expenses as a result of any personal injury or property loss or damage to Client or any other person not caused by Firm's negligence arising directly or indirectly out of any such marketing services

MARKETING EXPENSE: In the event that the Property does not sell during the term of this Agreement, Client shall nonetheless be obligated to reimburse Firm for actual documented expenses incurred in marketing the Property up to the amount of $ Not Applicable

## 5. SPECIAL PROVISIONS:
Client has procured interest from Wagner Property Group, LLC before this contract was signed. If Client sells the Property to

Wagner Property Group, LLC, Client shall pay Firm a commission equal to three percent (3%) of the gross sales price of the

Property instead of the amount listed in 7.a.(i).

☒ See attached Exhibit _____ A _____ for special provisions.

## 6. COOPERATION WITH FIRM:
    **a. Exclusive Rights:** Client agrees to cooperate with Firm to facilitate the sale of the Property. The Property may be shown only by appointment made by or through Firm.  Client immediately shall refer to Firm all inquiries or offers it may receive regarding the Property.  Client agrees to cooperate with Firm in bringing about a sale of the Property. All negotiations shall be conducted through Firm. Firm shall be identified as the contact firm with all state and local economic development agencies being notified of the Property's availability.

    **b. Services:**  No management services, repair services, collection services, notices, legal services or tax services shall be

Not Applicable
Firm Rep. Initials _____ Client Initials _____  FJSJ.

provided by Firm. In the event that Firm does procure any of these services at the request of Client, it is understood and agreed that Firm shall only be acting in the capacity of procurer for Client and shall accrue no liability or responsibility in connection with any services so obtained on behalf of Client. This exclusion of liability and responsibility shall not apply in the event that Firm directly contracts with Client to provide any such service.

**7. COMMISSIONS:** The amount, format or rate of real estate commission is not fixed by law. Commissions are set by each broker individually and may be negotiable between a firm and its client.

### a. Sales Commissions:

(i) Commissions shall be earned when Client accepts an unconditional offer from a buyer or when all conditions have been met following Client's acceptance of a conditional offer from a buyer, whether the buyer is procured by Firm, the Client or anyone else during the term of this Agreement. Client shall pay Firm a commission equal to _____ six _____ percent (__ 6 __%) of the _____ gross _____ sales _____ price _____ of _____ the _____ Property, _____ or _____ the _____ sum _____ of Not Applicable

(S ___ Not Applicable ___), whichever is greater, and/or other: Not Applicable

Commission shall be paid in cash or by bank check. Gross sales price includes any and all consideration received or receivable, in whatever form, by Client including, but not limited to, the assumption or release of existing liabilities. Client shall pay the commission upon delivery of the deed or other evidence of transfer of title or interest; provided, however, if the transaction involves an installment contract, then Client shall pay the commission upon the signing of such installment contract. In the event of any breach or termination by Client of any contract of purchase and sale, it is understood and agreed that the commission remains earned and payable upon notice given by Client to buyer of Client's intent not to proceed with such sale, notwithstanding the basis of such intent not to proceed. In the event Client contributes or conveys the Property or any interest therein to a joint venture, partnership or other business entity or executes an exchange, the commission shall be calculated on the fair market value of the Property or interest therein contributed, conveyed, transferred or exchanged and is payable at the time of the contribution, conveyance, transfer or exchange. If Client is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Client at the time of the transfer. Provided, however that this interest transfer provision shall not apply to a transfer of an interest in a partnership, corporation or other business entity between existing partners, shareholders or other interest holders of the entity.

☐ ~~If this box is checked, notwithstanding the foregoing, in the event that there is no cooperating agent involved in a sale transaction, the commission stated in (i) above shall be adjusted to~~ _____ ~~percent (~~ _____ ~~%) of the gross sales price of the Property or~~ _____ ~~(S~~ _____ ~~),~~ ~~whichever is greater, and/or other:~~ _____

~~For purposes of this subsection only, "cooperating agent" shall mean any agent other than the individual licensee signing on behalf of Firm below.~~

(ii) **Options:** ___ 10 ___ % of any option fees shall be paid to Firm at the time such monies are paid to Client, said amount to be applied to commissions payable pursuant to Paragraph 7.a.(i), provided, Firm shall not be paid, on account of this provision, an amount in excess of its entitlement pursuant to Paragraph 7.a.(i).

(iii) Should there be a forfeiture of earnest money, Firm shall be entitled to ___ 50 ___ % of same, provided that Firm shall not receive an amount in excess of the commission set forth in Paragraph 7.a.(i).

### b. General Commissions Provisions:

(i) Firm shall not be required to compensate or pay any commission to, either directly or indirectly, a buyer who seeks to be compensated or paid a commission in connection with any transaction pursuant to this Agreement.

(ii) If Firm has worked directly with a buyer in connection with the Property, either as a client or a customer, and such relationship is evidenced in writing (either by a CONFIRMATION OF AGENCY RELATIONSHIP AND REGISTRATION STATEMENT - NCAR Form 510 - or substantially similar registration document), then Firm may not compensate or pay any commission to another real estate agent (not associated with Firm) in connection with any transaction pursuant to this Agreement involving said registered buyer.

(iii) In the event Client fails to make payments within the time limits set forth in this Agreement, then the delinquent amount shall bear interest from the date due until paid at the maximum rate permitted in the state of North Carolina. If Firm is required to

Page 3 of 7
Firm Rep. Initials _____ Client Initials _____ EBSF.

institute legal action (including mediation or arbitration) against Client relating to this Agreement, Firm shall be entitled to costs of such action.

(iv) In the event Client sells or otherwise disposes of its interest in the Property, Client shall remain liable for payment of the commissions provided for in this Agreement, including, without limitation, the commission obligations set forth in Paragraph 7.a. unless the purchaser or transferee assumes all of such obligations in writing and Firm agrees in writing to such assumption.

(v) "Buyer" and "registered prospect" as used herein shall be deemed to include, but not be limited to: (i) any holder of a right of first offer or refusal or similar right which holder is not specifically named herein and excluded from the terms of this Agreement, (ii) any prospect registered by Firm pursuant to Paragraph 8 hereof (which prospect registration listing shall identify specific principals and shall not include brokers acting in a brokerage capacity), and, (iii) the successors or assigns, principals, officers, directors, employees or shareholders thereof or any affiliate, alter-ego or commonly controlled entity of any such person.

## 8.   REGISTERED PROSPECTS:

**a.   Prior Listing Agreements:** If the Property was exclusively listed for sale with another agency prior to this Agreement, then Client shall provide Firm in writing the names of registered prospects (as defined in Paragraph 7b.(v) above) and the duration of the protection period under the prior listing agreement. If Client provides such information to Firm within twenty (20) days of the date of this Agreement, then a direct or indirect sale or agreement to sell during such protection period to a registered prospect is excluded from this Agreement.

**b.   Later Sale To Registered Prospect:** If within __365__ days after the expiration or earlier termination of this Agreement (the "Protection Period"), Client directly or indirectly sells or agrees to sell the Property to a party with whom Firm (or any other agent acting for or through Firm) has had substantive bilateral communication concerning the Property during the term of this Agreement, Client shall pay Firm the same commission to which Firm would have been entitled had the sale been made during the term of this Agreement; provided that names of registered prospects (as defined in Paragraph 7b.(v) above) are delivered or postmarked to Client within fifteen (15) days after the expiration or earlier termination of this Agreement. **In the event the Property is exclusively listed for sale with another agency after the expiration or earlier termination of this Agreement and Client directly or indirectly sells or agrees to sell the Property to a registered prospect (as defined in Paragraph 7b.(v) above) during the Protection Period, then Client shall pay to Firm the same commission to which Firm would have been entitled.**

**9. LEASE PROTECTION PROVISION:** In the event that the Property is leased during the term hereof, it is acknowledged that Firm shall nonetheless earn a commission upon execution of such lease agreement. The parties agree to act in good faith in determining that the commission is an amount reasonable in this area for the type of Property.

**10. AUTHORITY:** Client represents and warrants to Firm that it has the right to offer the Property for sale. Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement and such instruments as may be necessary to effectuate any transaction contemplated by this Agreement on behalf of the party for whom he or she signs and that his or her signature binds such party and the holders of the interests in Client.

**11. BANKRUPTCY:** In the event that the Property comes under the jurisdiction of a bankruptcy court, Client shall immediately notify Firm of the same and, if Client is the subject of bankruptcy, shall promptly take all steps necessary to obtain court approval of Firm's appointment to sell the Property, unless Firm shall elect to terminate this Agreement upon said notice.

**12. INDEMNIFICATION:** Client represents and warrants that the information set forth herein and any other information as may be furnished to Firm by Client, including information relating to environmental matters, is correct to the best of Client's knowledge. Firm shall have no obligation or responsibility for checking or verifying any such information, except as may be required by law. Client shall indemnify Firm for any and all loss or damage sustained by Firm as a result of (i) Firm's or Client's furnishing such information to a buyer or anyone else; and (ii) the presence of storage tanks on, or the presence or release of hazardous substances, materials and wastes on or from, the Property.

**13. PARTIES AND BENEFITS:** This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors and assigns and their personal representatives. Client agrees that at any time during the term of this Agreement, Firm may either assign Firm's rights and responsibilities hereunder to another real estate agency, or transfer to another person or entity all or part of the ownership of Firm's real estate agency, and that in the event of any such assignment or transfer, this Agreement shall continue in full force and effect; provided, that any assignee or transferee must be licensed to engage in the business of real estate brokerage in the State of North Carolina. In the event of any such assignment or transfer, Client may terminate this Agreement without cause on thirty (30) days' prior written notice to the assignee or transferee of Client's intent to terminate this Agreement.

**14. COUNTERPARTS; ENTIRE AGREEMENT; AMENDMENT; SEVERABILITY; ATTORNEYS FEES; GOVERNING LAW:** This Agreement may be executed in one or more counterparts, which taken together, shall constitute one and the same original document. Copies of original signature pages of this Agreement may be exchanged via facsimile or e-mail, and any such copies shall

Page 4 of 7

Firm Rep. Initials _____   Client Initials _____   $\mathit{GBS}$ $\mathit{Jr.}$

constitute originals. This Agreement contains the entire agreement of the parties and supercedes all prior written and oral proposals, understandings, agreements and representations, all of which are merged herein. The parties acknowledge and agree that: (i) the initials lines at the bottom of each page of this Agreement are merely evidence of their having reviewed the terms of each page, and (ii) the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement. No amendment or modification to this Agreement shall be effective unless it is in writing and executed by all parties hereto. No waiver of any breach of any obligation or promise contained herein shall be regarded as a waiver of any future breach of the same or any other obligation or promise. The invalidity of one or more provisions of this Agreement shall not affect the validity of any other provisions hereof and this Agreement shall be construed and enforced as if such invalid provisions were not included. It shall not be deemed a breach of this Agreement for Firm to comply with an order resulting from an arbitration conducted by a REALTOR® association or issued by a court of competent jurisdiction. If legal proceedings (including mediation or arbitration) are instituted to enforce any provision of this Agreement, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorneys fees and court costs incurred in connection with the proceeding. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.

15  **INTELLECTUAL PROPERTY RIGHTS:** Client grants to Firm and any listing or commercial database service in which Firm or its agents participate a non-exclusive, perpetual license to use any information, photographs, drawings or other intellectual property that Client provides to Firm, including the rights to display, reproduce or make derivative works from the intellectual property.

16. **DUAL AGENCY:** Client has received a copy of the "Working With Real Estate Agents" brochure and has reviewed it with Firm. Client understands that the potential for dual agency will arise if a buyer who has an agency relationship with Firm becomes interested in viewing the Property. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

(a) Authorization *(initial only ONE)*.

___X___ Client authorizes the Firm to act as a dual agent, representing both the Client and the buyer, subject to the terms and conditions set forth in this paragraph below.

_____ Client desires exclusive representation at all times during this agreement and does NOT authorize Firm to act in the capacity of dual agent. *If Client does not authorize Firm to act as a dual agent, the remainder of this paragraph shall not apply.*

(b) Disclosure of Information. In the event Firm serves as a dual agent, Client agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:

(1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.

(c) Firm's Role as Dual Agent. If Firm serves as agent for both Client and a buyer in a transaction involving the Property, Firm shall make every reasonable effort to represent Client and buyer in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Client and buyer. Client understands and acknowledges that:

(1) Prior to the time dual agency occurs, Firm will act as Client's exclusive agent;

(2) In its separate representation of Client and buyer, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;

(3) Firm is required by law to disclose to Client and buyer any known or reasonably ascertainable material facts. Client agrees Firm shall not be liable to Client for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(d) Client's Role. Should Firm become a dual agent, Client understands and acknowledges that:

(1) Client has the responsibility of making Client's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Firm;

(2) Client is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Client and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

Page 5 of 7

Firm Rep. Initials _____   Client Initials _____   *RBS Jr.*

STANDARD FORM 571
Revised 7/2017
© 7/2017

(3) Client has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;
(4) Client may seek independent legal counsel to assist Client with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Client agrees to indemnify and hold Firm harmless against all claims, damages, losses, expenses or liabilities, other than violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Firm's role as a dual agent. Client shall have a duty to protect Client's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Client wants included in said agreement.

THE BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OF ANY PARTY OR PROSPECTIVE PARTY TO THIS AGREEMENT.

Page 6 of 7
Firm Rep. Initials _____ Client Initials _____

STANDARD FORM 571
Revised 7/2017
© 7/2017

THE NORTH CAROLINA ASSOCIATION OF REALTORS , INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

**CLIENT:**
Individual

Date:

Date:

**Business Entity**

YREVA Enterprises, LLC
(Name of Entity)

Name: Avery B. Green

Title: Managing Member, YREVA Enterprises, LLC

Date: 3/19/16

Address: 7103 Mackintosh Place

Summerfield, NC 27358

Phone: (336) 549-6800

Facsimile:

E-mail: averybgreen@gmail.com

By: Everett B. Saslow, Jr., Trustee

Name: Everett B. Saslow, Jr.

Title: Bankruptcy Trustee for Avery B. Green

Date: 3/20/18

Address: Post Office Box 989

Greensboro, North Carolina 27402

Phone: 336-379-1390 (extension 243)

E-mail: esaslow@hillevans.com

**FIRM:**

Howard Perry & Walston Commercial, LLC
(Name of Firm)

By:

Name: Jordan Qualls

Individual License #: 277649

Date: 3/12/2018

Address: 1001 Wade Avenue, Suite 111

Raleigh, NC 27605

Phone: 919.913.1433

Facsimile:

E-mail: jordan.qualls@svn.com

Page 7 of 7

STANDARD FORM 571
Revised 7/2017
©7/2017

## Exhibit A
## Addendum to Exclusive Right to Sell Listing Agreement (Yreva Enterprises)

Notwithstanding anything to the contrary stated in the Exclusive Right to Sell Listing Agreement to which this Addendum is attached, the following provisions and conditions apply to this Agreement:

1.     Everett B. Saslow, Jr., Trustee as seller or Client (hereinafter called "Seller") is a Chapter 11 Trustee in bankruptcy in the bankruptcy case of Avery Bradley Green. Avery Bradley Green is the sole owner of Yreva Enterprises, LLC, and such ownership interest is part of the bankruptcy estate. Seller is the sole representative of the bankruptcy estate.

2.     In the event that the United States Bankruptcy Court so rules, then the fees and commissions provided for by this Agreement will not become payable unless such fee or commission is approved by the United States Bankruptcy Court and except to the extent that such fee is approved by the United States Bankruptcy Court.

3.     Either Firm or Seller can terminate this Agreement at any time upon forty five (45) days written notice given to the other party. If Seller terminates this Agreement before it has been in effect for six (6) months, Seller shall reimburse Firm for actual documented expenses incurred in marketing the Property up to the amount of five thousand dollars ($5,000).

4.     No commission is earned until the Property is sold at closing. In the event this Agreement is terminated prior to closing, commission to Firm shall be earned upon closing according to the terms set out in paragraph 8.b of this Agreement.

5.     Paragraph 9 does not apply to a new lease with the existing tenant or affiliates. Paragraph 10 does not apply to Everett B. Saslow, Jr. Paragraph 11 is modified by the disclosures in this Exhibit A. The third sentence of paragraph 12 does not apply to Everett B. Saslow, Jr., Trustee. The indemnification clause on Page 6 of 7 does not apply to Everett B. Saslow, Jr., Trustee. There are liens on the property which will need to be cleared or released at closing. Seller executes this Agreement as trustee in a representative capacity, and Everett B. Saslow, Jr. has no personal or individual liability hereunder.

Agent Initials _____//Seller Initials _____ EBSF.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Application to Approve Employment of Real Estate Broker and Special Legal Counsel for Green Manor Rest Home Facility was served by United States First Class Mail, upon the following parties:

Jordan Qualls
1001 Wade Avenue, Suite 111
Raleigh, NC 27605

Avery Bradley Green
P.O. Box 38338
Greensboro, NC 27438

Phillip Bolton
Post Office Box 10247
Greensboro, NC 27404-0247

This the 20th day of March, 2018.

     s/ Everett B. Saslow, Jr.
Everett B. Saslow, Jr.