UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| In Re: | ) |
| | ) |
| Avery Bradley Green, | )  Case No.: B-17-11043 C-7G |
| | ) |
| Debtor. | ) |

## APPLICATION TO APPROVE EMPLOYMENT OF REAL ESTATE BROKER

**NOW COMES** the undersigned Trustee in this case, pursuant to Section 327(a) of the Bankruptcy Code, and respectfully states to the Court:

1. It is necessary or advisable for the Trustee to have the services of a real estate broker to assist in selling certain real estate owned by the Debtor, with any such sale subject to approval of the Court and the Trustee.

2. Thomas Somerville with eXp REO Brokers, Inc. is a duly qualified real estate broker with experience in such matters, and the Trustee wishes to use his services as real estate broker in this case. Attached hereto as an exhibit is the proposed listing agreement for the broker's employment in selling the real estate.

3. To the best of the Trustee's knowledge, the proposed real estate broker has no connection with the Debtor, creditors or any other party-in-interest, or their respective attorneys or accountants and is eligible under the Bankruptcy Code for employment for the purposes set forth in this application.

Wherefore, the Trustee requests that the Court enter an Order authorizing the Trustee to retain Thomas Somerville as real estate broker with such services to be compensated from the estate pursuant to Bankruptcy Code §330(a), subject to the review and approval by the Bankruptcy Court as part of the application to approve any sale, if and only if there occurs a private sale in accordance with the listing agreement attached to this application.

Respectfully submitted on this the 10th day of September, 2018.

                                                     s/ Everett B. Saslow, Jr.
                                                     Everett B. Saslow, Jr.
                                                     N.C. State Bar No. 7301

OF COUNSEL:
HILL EVANS JORDAN & BEATTY
A Professional Limited Liability Company
Post Office Box 989
Greensboro, North Carolina 27402
Telephone: (336) 379-1390

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In Re:                                    )
                                          )
Avery Bradley Green,                      )    Case No.: B-17-11043 C-7G
                                          )
          Debtor.                         )

## AFFIDAVIT OF DISINTERESTEDNESS

I, Thomas Somerville, Real Estate Broker, make solemn oath according to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

1. I am a Real Estate Broker with, and principal in, the firm of eXp REO Brokers, doing business in the State of North Carolina, and I maintain an office at 3150 N. Elm St., Ste. 201-B, Greensboro, North Carolina.

2. Neither I nor eXp REO Brokers is a creditor of the Debtor.

3. I have no interest adverse to the interest of any of the creditors of the Debtor in this case; and I have no direct or indirect relationship to, connection with, or interest in the Debtor.

4. Neither I nor the firm of eXp REO Brokers has any connection with the Debtor in this case, the creditors, the United States Bankruptcy Administrator, or any other party in interest or their respective attorneys; and neither I nor eXp REO Brokers represents any interest adverse to the Debtor or the estate in the matters upon which I and my firm are to be engaged. I am eligible under the Bankruptcy Code for employment for the purposes set forth in the Trustee's application.

5. I have not shared or agreed to share any compensation with any person, other than my partners, employees, or regular associates, and other than division of total commission consistent with ordinary practice under MLS and normal real estate practices.

This the 5TH day of September, 2018.

_____
Thomas Somerville

NORTH CAROLINA

GUILFORD COUNTY

I, Cari B. Banner, a Notary Public for said County and State, do hereby certify that Thomas Somerville personally appeared before me this day and, being first duly sworn, acknowledged the due execution of the foregoing affidavit.

Witness my hand and official seal, this the 5th day of September, 2018.

_____
Notary Public

Cari B. Banner
Notary Public
Guilford County, NC
My Commission Expires July 12, 2022

My Commission Expires: 7-12-22

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
**[Consult "Guidelines" (Form 101G) for guidance in completing this form]**

This EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT ("Agreement") is entered into between **Everett B. Saslow, Jr. Trustee** as Seller(s) ("Seller") of the property described below (the "Property"), and **EXO REO BROKERS** as Listing Firm ("Firm"). The individual agent who signs this Agreement shall, on behalf of the Firm, be primarily responsible for ensuring that the Firm's duties hereunder are fulfilled; however, it is understood and agreed that other agents of the Firm may be assigned to fulfill such duties if deemed appropriate by the Firm. For purposes of this Agreement, the term "Firm," as the context may require, shall be deemed to include the individual agent who signs this Agreement and any other agents of the Firm.

In consideration for Firm's services and efforts to find a buyer for the Property, Firm is hereby granted the exclusive right to sell the Property on the terms and conditions set forth in this Agreement.

**Seller represents that as of the Effective Date the Seller is not (or will not be, if the Property is currently listed) a party to a listing agreement with any other real estate firm regarding the Property. Seller also represents that Seller has received a copy of the "WORKING WITH REAL ESTATE AGENTS" brochure and has reviewed it with Firm.**

1. **TERM OF AGREEMENT.**
   (a) **Term.** The term of this Agreement ("Term") shall begin on its Effective Date and shall end at midnight on its Expiration Date.
   (b) **Effective Date.** This Agreement shall become effective and the Seller and Firm's respective rights and obligations under this Agreement shall commence ("Effective Date") as follows *(check appropriate box)*:
   
   ☒ The Effective Date shall be the date that this Agreement has been signed by both Seller and Firm
   
   ☐ The Property is currently listed for sale exclusively with another real estate firm. Seller represents that the current listing agreement expires on _____. The Effective Date of this Agreement shall commence immediately upon the expiration of the current listing agreement. (**NOTE:** According to Article 16 of the REALTORS® Code of Ethics: *"REALTORS® shall not engage in any practice or take any action inconsistent with exclusive representation or exclusive brokerage relationship agreements that other REALTORS® have with clients."*)
   
   (c) **Expiration Date.** This Agreement shall terminate at midnight on _____ ("Expiration Date").

2. **PROPERTY.** The Property that is the subject of this Agreement shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 3 and 4 below.
   
   Street Address: **7103 MACKINTOSH PL**
   City: **SUMMERFIELD**   Zip **27358**
   County: **GUILFORD**, North Carolina
   
   **NOTE:** Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown. Legal Description: (Complete *ALL* applicable)
   
   - Plat Reference: Lot/Unit _____, Block/Section _____, Subdivision/Condominium _____ _____, as shown on Plat Book/Slide **119** at Page(s) **84**
     The PIN/PID or other identification number of the Property is: **0149465**
   - Other description: **32 PH2 PB 119-84 TROTTER RIDGE II**
   
   Some or all of the Property may be described in Deed Book **4536** at Page **280**

3. **FIXTURES AND EXCLUSIONS.**
   (a) **Specified Items:** Unless identified in subparagraph (d) below, the following items, including all related equipment and remote control devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

   - Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
   - All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
   - Antennas; satellite dishes and receivers
   - Basketball goals and play equipment (permanently attached or in-ground)

   - Ceiling and wall-attached fans; light fixtures (including existing bulbs)
   - Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
   - Floor coverings (attached)
   - Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) of the Offer to Purchase and

Page 1 of 10

REALTOR® Individual agent initials _____ Seller initials _____ _____   EQUAL HOUSING OPPORTUNITY   **STANDARD FORM 101**
Revised 7/2017
© 7/2017

EXP REO BROKERS INC, 3150 N Elm Street Greensboro NC 27408   Phone: (336)387-2236   Fax: (336)740-9096   7103 MACKINTOSH
Thomas Somerville   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

- Contract (form 2-T) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and drapery rods and brackets, door and window screens and combination doors, awnings and storm windows

(b) **Items Leased or Not Owned:** Any item which is leased or not owned by Seller, such as fuel tanks, antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey: _____ .

(c) **Other Fixtures/Unspecified items:** Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of liens.

(d) **Other Items That Do Not Convey:** The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (c)*):_____ .
Seller shall repair any damage caused by removal of any items excepted above.

4. **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer at no value at Closing: _____ .

5. **HOME WARRANTY.** Seller ☐ agrees ☒ does not agree to obtain and pay for at settlement a one year home warranty for the Property at a cost not to exceed $ _____ . If Seller agrees to obtain and pay for a home warranty at any time, Firm hereby discloses that a fee of _____ will be offered to Firm by the person or entity through or from which any home warranty is obtained as compensation to Firm for its assistance in obtaining the home warranty, and Seller hereby consents to Firm's receipt of such fee.

6. **LISTING PRICE.** Seller lists the Property at a price of $ _____ on the following terms:
☐ Cash ☐ FHA ☐ VA ☐ USDA ☐ Conventional ☐ Loan Assumption ☐ Seller Financing ☐ Other _____ .
Seller agrees to sell the Property for the Listing Price or for any other price or on any other terms acceptable to Seller.

7. **FIRM'S COMPENSATION.**
   (a) **Fee.** Seller agrees to pay Firm a total fee of _____6.000_____ % of the gross sales price of the Property, OR _____
("Fee"), which shall include the amount of any compensation paid by Firm as set forth in paragraph 8 below to any other real estate firm, including individual agents and sole proprietors ("Cooperating Real Estate Firm").
   (b) **Fee Earned.** The Fee shall be deemed earned under any of the following circumstances:
      (i)  If a ready, willing and able buyer is procured by Firm, a Cooperating Real Estate Firm, the Seller, or anyone else during the Term of this Agreement at the price and on the terms set forth herein, or at any price and upon any terms acceptable to the Seller;
      (ii) If the Property is sold, optioned, exchanged, conveyed or transferred, or the Seller agrees, during the Term of this Agreement or any renewal hereof, to sell, option, exchange, convey or transfer the Property at any price and upon any terms whatsoever; or
      (iii) If the circumstances set out in (i) or (ii) above have not occurred, and if, within _____0_____ days after the Expiration Date ("Protection Period"), Seller either directly or indirectly sells, options, exchanges, conveys or transfers, or agrees to sell, option, exchange, convey or transfer the Property upon any terms whatsoever, to any person with whom Seller, Firm, or any Cooperating Real Estate Firm communicated regarding the Property during the Term of this Agreement or any renewal hereof, provided the names of such persons are delivered or postmarked to the Seller within 15 days after the Expiration Date. HOWEVER, Seller shall NOT be obligated to pay the Fee if a valid listing agreement is entered into between Seller and another real estate broker and the Property is subsequently sold, optioned, exchanged, conveyed or transferred during the Protection Period.

    (c) **Fee Due and Payable.** Once earned as set forth above, the Fee will be due and payable at the earlier of:
        (i)   Closing on the Property;
        (ii)   The Seller's failure to sell the Property (including but not limited to the Seller's refusal to sign an offer to purchase the Property at the price and terms stated herein or on other terms acceptable to the Seller, the Seller's default on an executed sales contract for the Property, or the Seller's agreement with a buyer to unreasonably modify or cancel an executed sales contract for the Property); or
        (iii)   Seller's breach of this Agreement.
    (d) **Transfer of Interest in Business Entity.** If Seller is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the Fee shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Seller at the time of the transfer.
    (e) **Additional Compensation.** If additional compensation, incentive, bonus, rebate and/or other valuable consideration ("Additional Compensation") is offered to the Firm from any other party or person in connection with a sale of the Property, Seller will permit Firm to receive it in addition to the Fee. Firm shall timely disclose the promise or expectation of receiving any such Additional Compensation and confirm the disclosure in writing before Seller makes or accepts an offer to sell. (**NOTE:** NCAR Form #770 may be used to confirm the disclosure of any such Additional Compensation).
    (f) **Attorney Fees and Costs.** If Firm is the prevailing party in any legal proceeding brought by Firm against Seller to recover any or all of the Fee, Firm shall be entitled to recover from Seller reasonable attorney fees and court costs incurred by Firm in connection with the proceeding.

8. **COOPERATION WITH/COMPENSATION TO OTHER FIRMS.** Firm has advised Seller of Firm's company policies regarding cooperation and the amount(s) of any compensation that will be offered to other brokers, including but not limited to, seller subagents, buyer agents or both, brokers who do or do not participate in a listing service and brokers who are or are not REALTORS®. Seller authorizes Firm to (*Check ALL applicable authorizations*):
    [X]   Cooperate with subagents representing the Seller and offer them the following compensation: __3.000__ % of the gross sales price or $ _____ ; and/or,
    [X]   Cooperate with buyer agents representing the buyer and offer them the following compensation: __3.000__ % of the gross sales price or $ _____ ; and/or,
    [ ]   Cooperate with and compensate other Cooperating Real Estate Firms according to the Firm's attached policy.
Firm will promptly notify Seller if compensation offered to a Cooperating Real Estate Firm is different from that set forth above. Agents with Cooperating Real Estate Firms must orally disclose the nature of their relationship with a buyer (subagent or buyer agent) to Firm at the time of initial contact with Firm, and confirm that relationship in writing no later than the time an offer to purchase is submitted for the Seller's consideration. Seller should be careful about disclosing confidential information because agents representing buyers must disclose all relevant information to their clients.

9. **FIRM'S DUTIES.** Firm agrees to provide Seller the benefit of Firm's knowledge, experience and advice in the marketing and sale of the Property. Seller understands that Firm makes no representation or guarantee as to the sale of the Property, but Firm agrees to use its best efforts in good faith to find a buyer who is ready, willing and able to purchase the property. In accordance with the REALTORS® Code of Ethics, Firm shall, with Seller's approval, in response to inquiries from buyers or Cooperating Real Estate Firms, disclose the existence of offers on the Property. Where Seller authorizes disclosure, Firm shall also disclose whether offers were obtained by the individual agent who signs this Agreement, another agent of the Firm, or by a Cooperating Real Estate Firm. Seller acknowledges that real estate brokers are prohibited by N.C. Real Estate Commission rule from disclosing the price or other material terms contained in a party's offer to purchase, sell, lease, rent or option real property to a competing party without the express authority of the party making the offer.

Seller acknowledges that Firm is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which the Firm knows or reasonably should know, and that REALTORS® have an ethical responsibility to treat all parties to the transaction honestly. Seller further acknowledges that Firm is being retained solely as a real estate professional, and understands that other professional service providers are available to render advice or services to Seller, including but not limited to an attorney, insurance agent, tax advisor, surveyor, structural engineer, home inspector, environmental consultant, architect, or contractor. Although Firm may provide Seller the names of providers who claim to perform such services, Seller understands that Firm cannot guarantee the quality of service or level of expertise of any such provider. Seller agrees to pay the full amount due for all services directly to the service provider whether or not the transaction closes. Seller also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur either as a result of Seller's selection and use of any such provider or Seller's election not to have one or more of such services performed.

THE AGENT (FIRM) SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY TO THIS AGREEMENT.

10. **MARKETING.**

    (a) **Commencement of Marketing.** The Firm is authorized to commence marketing the Property as described in subparagraph (b) below on the Effective Date OR, if selected ☐ on (insert date only if applicable) _____ ("Delayed Marketing Date").

    **NOTE:** If a Delayed Marketing Date is selected, Seller understands and acknowledges the following:
    - THE PROPERTY MAY NOT BE SHOWN BY ANY REAL ESTATE AGENT, INCLUDING FIRM'S AGENTS, PRIOR TO THE DELAYED MARKETING DATE.
    - FIRM IS OBLIGATED TO PRESENT TO SELLER ANY OFFERS ON THE PROPERTY THAT MAY BE SUBMITTED TO FIRM PRIOR TO THE DELAYED MARKETING DATE.
    - IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.

    (b) **Marketing Authorization.** Seller authorizes Firm *(Check ALL applicable sections)*:

    ☒ **Signs.** To place "For Sale," "Under Contract," "Sale Pending," or other similar signs on the Property (where permitted by law and relevant covenants) and to remove other such signs.

    ☒ **Open Houses.** To conduct open houses of the Property at such times as Seller and Firm may subsequently agree.

    ☒ **Listing Service.** To submit pertinent information concerning the Property to any listing service of which Firm is a member or in which any of Firm's agents participate and to furnish to such listing service notice of all changes of information concerning the Property authorized in writing by Seller. Seller authorizes Firm, upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

    ☒ **Lock/Key Boxes.** The Seller ☒ does ☐ does not authorize Firm to place lock/key boxes on the Property.

    ☒ **Advertising Other Than On The Internet.** To advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Firm may decide.

    ☒ **Internet Advertising.** To display information about the Property on the Internet either directly or through a program of any listing service of which the Firm is a member or in which any of Firm's agents participate. Seller further authorizes other firms who belong to any listing service of which the Firm is a member or in which any of Firm's agents participate to display information about the Property on the Internet in accordance with the listing service rules and regulations, and also authorizes any listing service of which the Firm is a member or in which any of Firm's agents participate to use, license or sell to others information about the Property entered into the listing service. Seller specifically authorizes the display of the address of the Property, automated estimates of the market value of the Property and third-party comments about the Property. If seller desires to limit or prohibit Internet advertising as set forth above, seller must complete an opt-out form in accordance with listing service rules.

    **NOTE:** NCAR Form #105 may be used to limit or prohibit Internet advertising and explains how such limitations may or may not be effective.

    (c) **"Coming Soon" Advertising.** ☐ (Check only if applicable). If applicable, Firm is authorized to market the Property as "Coming Soon," commencing on the Effective Date, in any media Firm may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☐ are not attached to this Agreement.

    (d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Firm, including but not limited to:
    (i) unauthorized use of a lock/key box,
    (ii) control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property
    (iii) inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Firm participates, and

(iv) information about the Property placed on the Internet by or through any listing service in which the Firm participates which is inaccurate or dated.

Seller therefore agrees to release and discharge Firm and Firm's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Firm's negligence arising directly or indirectly out of any such marketing services.

**WARNING:** IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

11. **EARNEST MONEY.** Unless otherwise provided in the sales contract, any initial and additional earnest money deposits and any other earnest monies paid in connection with any transaction shall be held by the Firm, in escrow, until the consummation or termination of the transaction. Any earnest money forfeited by reason of the buyer's default under a sales contract shall be divided equally between the Firm and Seller. In no event shall the sum paid to the Firm because of a buyer's default be in excess of the fee that would have been due if the sale had closed as contemplated in the sales contract. In accordance with NC General Statutes Section 93A-12, if a dispute regarding the return or forfeiture of any earnest money deposit arises between Seller and the buyer, the escrow agent holding the deposit may deposit the disputed monies with the appropriate Clerk of Court following written notice to the parties. In the event of any such dispute, Seller directs Firm to disclose Seller's last known mailing address to the escrow agent upon request to enable the escrow agent to comply with the notice requirement of such law.

12. **SELLER REPRESENTATIONS.**
    (a) **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.
    (b) **Synthetic Stucco.** To the best of Seller's knowledge, the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows: **NO REPRESENTATION**.
    (c) **Owners' Association.**
        (i) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owners' association or the association manager is: **TROTTER RIDGE HOA**
    _____
    Owners' association website address, if any: _____
    The name, address and telephone number of the president of the owners' association or the association manager is: _____
    _____
    Owners' association website address, if any: _____
        (ii) Complete ONLY if New Construction or where the Residential Property and Owner's Association Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement (Standard Form 2A12-T) at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.
    (d) **Termite Bond.** To the best of Seller's knowledge there ☐ is ☒ is not a termite bond on the Property. If there is a termite bond, it ☐ is ☐ is not transferable. If transferable, the transfer cost is $ _____ , and the bonding company is: _____ .
    (e) **Ownership.** Seller represents that Seller:
        ☒ has owned the Property for at least one year;
        ☐ has owned the Property for less than one year
        ☐ does not yet own the Property

If Seller does not yet own the Property, Seller agrees to promptly provide Firm information pertaining to Seller's acquisition of the Property, such as a copy of a sales contract or option for the Property, and to keep Firm timely informed of all developments pertaining to Seller's acquisition of the Property.
    (f) **Receipt of Sample Forms.**
        ☒ Seller acknowledges receipt of a sample copy of an Offer to Purchase And Contract (form 2-T) or Offer to Purchase and Contract–New Construction (form 800-T), as may be appropriate for review purposes.
        ☒ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election form (form #760) for review purposes.

(g) **Current Liens.** Seller represents to the best of Seller's knowledge:
  (1) The Property ☒ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
    (i) There is a first deed of trust or mortgage on the Property securing a loan held by:
      Lender Name: _____
      Approximate balance: $ _____ Lender Phone#: _____
      Lender Address: _____
    (ii) There is a second deed of trust or mortgage on the Property securing a loan held by:
      Lender Name: _____
      Approximate balance: $ _____ Lender Phone#: _____
      Lender Address: _____
    (iii) There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
      Lender Name: _____
      Approximate balance: $ _____ Lender Phone#: _____
      Lender Address: _____
  (2) Seller is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.
  (3) Seller is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.
  (4) There are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmen's liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.
  (5) There are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.
  (6) There are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.
  (7) Specify any information, including approximate balances, required by Seller representations (2) through (6) above
**NOTE:** Outstanding liens may affect Seller's net proceeds : _____
_____
_____

(h) **Bankruptcy.** Seller currently:
  (1) ☒ is ☐ is not under bankruptcy protection under United States law.
  (2) ☐ is ☐ is not contemplating seeking bankruptcy protection during the term of this Agreement.
(i) **Access.** Seller represents that the Property has legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Firm information pertaining to any such agreement.
(j) **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable:
  (i) Seller agrees to promptly provide Firm a copy of any such lease(s) or a written statement of the terms of any oral lease(s);
  (ii) If the Property is managed by someone other than Seller, the manager's name and contact information is as follows: _____ .
Seller authorizes any such manager to release and disclose to Firm any relevant information about any leases(s) and to cooperate with Firm in the sale of the Property.
(k) **FHA Appraisal.** To the best of Seller's knowledge, an FHA appraisal ☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.
**NOTE:** Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.
(l) **Special Assessments.** To the best of Seller's knowledge, there are no Proposed or Confirmed Special Assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any): **None** _____
_____
(m) **Manufactured (Mobile) Home.** Complete ONLY if there is a manufactured (mobile) home(s) on the Property that Seller intends to include as a part of the sale of the Property: VIN(s): _____ or ☐ VIN(s) unknown. Other description (*year, model, etc.*): _____
(n) **Fuel Tank/Fuel:** To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*
  Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor is:
  _____
  Location of tank 1: ☐ above ground ☐ below ground
  Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

Page 6 of 10                                                              STANDARD FORM 101
                                                                          Revised 7/2017
Individual agent initials _____    Seller initials _____ _____       © 7/2017

|   |   |
|---|---|
| Refilling schedule: | ☐ auto-refill (*insert frequency*): _____  ☐ other (*describe*): _____ |

Name and contact information of fuel vendor: _____
Ownership of tank 2:  ☐ owned  ☐ leased. If leased, the name and contact information of tank lessor is:
_____

Location of tank 2:   ☐ above ground  ☐ below ground
Type of fuel:     ☐ oil  ☐ propane  ☐ gasoline and/or diesel  ☐ other: _____
Refilling schedule:   ☐ auto-refill (*insert frequency*): _____  ☐ other (*describe*): _____
Name and contact information of fuel vendor: _____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 12 are incorrect or no longer accurate, Seller shall promptly notify Firm and cooperate with Firm in taking appropriate corrective action.

13. **SELLER'S DUTIES.** Seller agrees to cooperate with Firm in the marketing and sale of the Property, including but not limited to:
   (a) providing to Firm, in a timely manner, accurate information including but not limited to the following:
      (i) Residential Property and Owner's Association Disclosure Statement (unless exempt);
      (ii) Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt); and
      (iii) Lead-Based Paint or Lead-Based Paint Hazard Addendum with respect to any residential dwelling built prior to 1978.
   (b) making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice;
   (c) providing Firm as soon as reasonably possible after the execution of this Agreement copies of the following documents (where relevant) in the possession of Seller:
      (1) restrictive covenants affecting the Property;
      (2) bylaws, articles of incorporation, rules and regulations, and other governing documents of the owners' association and/or the subdivision;
      (3) title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust and easements relating to the Property.

Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Firm, (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Firm, and (3) the owners' association manager (or other authorized representative) to release and disclose copies of all documents referenced in subparagraphs (c)(1) and (c)(2) above. Seller acknowledges and understands that Firm is under no obligation to acquire any of the information referenced in this subparagraph (c) or to verify the accuracy of any such information that may be provided to Firm.

   (d) immediately referring to Firm all inquiries or offers it may receive regarding the Property; showing the Property only by appointment made by or through Firm; and conducting all negotiations through Firm;
   (e) executing and delivering at settlement a GENERAL WARRANTY DEED conveying fee simple marketable title to the Property, including legal access to a public right of way, free of all encumbrances except ad valorem taxes for the current year, utility easements, rights-of-way, and unviolated restrictive covenants, if any, and those encumbrances that the buyer agrees to assume in the sales contract.

Seller represents that the Seller has the right to convey the Property, and that there are currently no circumstances that would prohibit the Seller from conveying fee simple marketable title as set forth in the preceding sentence, except as follows (*insert N/A if not applicable*): _____
_____

**NOTE:** If any sale of the Property may be a "short sale," consideration should be given to attaching NCAR form 104 as an addendum to this Agreement.

   (f) providing Firm, in a timely manner, any information necessary (including any information omitted under Paragraph 12) to enable Firm to prepare an estimate of Seller's net proceeds at settlement. Seller acknowledges and understands that any such estimate is an approximation only and that Seller should verify the accuracy of the calculations.
   (g) if required by N.C.G.S. §44A-11.1, timely designating a Lien Agent, and providing Firm as soon as reasonably possible a copy of the appointment of Lien Agent.

14. **HOME INSPECTION:** Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller  ☐ agrees  ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this agreement.

☒  Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

15. **PHOTOGRAPHS AND OTHER MATERIALS:** Firm is specifically authorized to use, for any purposes whatsoever, any and all photographs, drawings, video, advertising copy or other information obtained by or provided to Firm pursuant to this Agreement (including but not limited to any information concerning the price and terms of the sale of the Property, the description of the Property

and the length of time the Property is on the market) ("Materials"), both before and after the sale or, in the event there is not a sale, after this Agreement has expired. Seller shall not have or acquire any rights to use any of the Materials created by, on behalf of, or at the direction of Firm or an agent of Firm either during or after the Term of this Agreement without Firm's written consent. If Seller provides any Materials to Firm ("Seller Materials"), Seller represents that Seller owns the Seller Materials or otherwise has the legal right to provide the Seller Materials to Firm, and Seller grants to Firm and any listing service in which Firm or its agents participate a non-exclusive, perpetual license to use the Seller Materials, including the rights to display, reproduce, distribute or make derivative works from the Seller Materials. Seller agrees to indemnify and hold Firm and its agents harmless for any and all claims resulting from use of the Seller Materials under the terms of this license.

16. **ADDITIONAL TERMS AND CONDITIONS.** The following additional terms and conditions shall also be a part of this Agreement: **Trustee Addendum**
_____
_____

17. **DUAL AGENCY.** Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Firm becomes interested in viewing the Property. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

   (a) Disclosure of Information. In the event Firm serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:
   (1) that a party may agree to a price, terms, or any conditions of sale other than those offered;
   (2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
   (3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.
   (b) Firm's Role as Dual Agent. If Firm serves as agent for both Seller and a buyer in a transaction involving the Property, Firm shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:
   (1) Prior to the time dual agency occurs, Firm will act as Seller's exclusive agent;
   (2) In its separate representation of Seller and buyer, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;
   (3) Firm is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.
Seller agrees Firm shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.
   (c) Seller's Role. Should Firm become a dual agent, Seller understands and acknowledges that:
   (1) Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Firm;
   (2) Seller is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;
   (3) Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;
   (4) Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Firm become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Firm's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.
   (d) Authorization *(initial only ONE)*.

_____ _____ Seller authorizes the Firm to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 17.
_____ _____ Seller desires exclusive representation at all times during this agreement and does NOT authorize Firm to act in the capacity of dual agent. *If Seller does not authorize Firm to act as a dual agent, the remainder of this paragraph shall not apply.*
   (e) Designated Agent Option (*Initial only if applicable*).

_____ _____ Seller hereby authorizes the Firm to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

**NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of the Firm in connection with the transaction or if designated agency is otherwise prohibited by law.

18.  **MEDIATION.** If a dispute arises out of or related to this Agreement or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If the need for mediation arises, the parties will choose a mutually acceptable mediator and will share the cost of mediation equally.

[THIS SPACE INTENTIONALLY LEFT BLANK]

19. **ENTIRE AGREEMENT/CHANGES/TERMINATION.** This Agreement constitutes the entire agreement between Seller and Firm and there are no representations, inducements, or other provisions other than those expressed herein. This Agreement may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument. All changes, additions, or deletions to this Agreement must be in writing and signed by both Seller and Firm. Seller acknowledges and understands that this Agreement constitutes a binding contract between Seller and Firm. Although Seller may at any time withdraw from the fiduciary relationship existing between Seller and Firm, the contract created by this Agreement may not be terminated by Seller or Firm prior to its Expiration Date without legally sufficient cause. Any such termination shall be by mutually-acceptable written agreement signed by both Seller and Firm. **Seller and Firm each acknowledge receipt of a signed copy of this Agreement.**

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Seller: **Everett B. Saslow, Jr. Trustee** _____ _____
         Print Name                              Signature                      Date

Contact Information: _____  _____  _____  _____
                     Home    Work    Cell    Email

Mailing Address: _____

Seller: _____ _____ _____
         Print Name                              Signature                      Date

Contact Information: _____  _____  _____  _____
                     Home    Work    Cell    Email

Mailing Address: _____

Entity Seller: _____
                (Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____ Date: _____

Name: _____ Title: _____

Contact Information: _____  _____  _____  _____
                     Home    Work    Cell    Email

Mailing Address: _____

Firm: **EXO REO BROKERS** _____ Phone: **336.387.2236**
       Print Real Estate Firm Name

By: *[DocuSigned by: Thomas Somerville, 07CE4A118C9D435]*    **190717**    **9/5/2018 7:34:49 AM PDT**
    Individual Agent Signature          Individual License Number    Date

Office: **EXO REO BROKERS**

Address: **3150 N ELM ST #201-B, GREENSBORO, NC  27408**

Office Phone: **(336)387-2236**   Fax: _____   Email: **thomass@exprealty.com**

## Addendum to Exclusive Right to Sell Listing Agreement

Notwithstanding anything to the contrary stated in the Exclusive Right to Sell Listing Agreement to which this Addendum is attached, the following provisions and conditions apply to this Agreement:

1.  Everett B. Saslow, Jr., Trustee as Seller (hereinafter called "Seller") is a Trustee in bankruptcy. Seller's obligations under this Agreement are subject to approval by the United States Bankruptcy Court, with such approval to be requested from the Court at such time as an offer to purchase is accepted by the Seller. The Term of the Agreement is subject to being terminated by a creditor's obtaining relief from stay in the Bankruptcy case or by the Bankruptcy Court's granting any party's application for abandonment or for a public auction sale or for approval of a private sale. The Bankruptcy Court may enter Orders providing that this Agreement is not an exclusive Agreement. Seller has advised Firm that any employment of Firm as a professional needs to be approved by the United States Bankruptcy Court.

2.  The fees and commissions provided for by this Agreement will not become payable unless such fee or commission is approved by the United States Bankruptcy Court and except to the extent that such fee is approved by the United States Bankruptcy Court. The Seller will make application to the Court to request approval of the fee at such time as an offer to purchase is accepted by the Seller.

3.  Either Firm or Seller can terminate this Agreement at any time upon written notice given to the other party.

4.  No commission is earned until the Property is sold at closing.

5.  No commissions or fees are due under any terms of the Agreement except to the extent approved by the United States Bankruptcy Court.

6.  Trustee makes no representations under paragraph 12. There are liens on the property which will need to be cleared at closing. Trustee does not have the information specified in paragraph 13(a).

7.  At Closing, Trustee will deliver a Trustee's deed. Trustee reserves the right to transfer all existing deeds of trust and any other liens to the proceeds of sale by Order of the United States Bankruptcy Court.

Agent Initials _[initialed]_ //Seller Initials _____

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing Application to Approve Employment of Real Estate Broker was served by United States First Class Mail, upon the following parties:

        Thomas Somerville  
        eXp REO Brokers  
        3150 N. Elm St., Ste. 201-B  
        Greensboro, NC 27408

This the 10th day of September, 2018.

                                            s/ Everett B. Saslow, Jr.  
                                            Everett B. Saslow, Jr.